STATE v. CANDA CATTLE CAR COMPANY.[1]

February 21, 1902.

Nos. 12,892—(215),

### Taxes—Freight Line Companies—Constitution.

Laws 1897, c. 160, construed as authorizing and providing for a tax upon the property of corporations engaged in interstate commerce, and coming within its operation, for which it was competent for the legislature to provide, but the rate of taxation imposed thereby (two per cent. upon the value of such property), not being uniform with the rate imposed by law upon other property similarly taxed, renders the act

[1] Reported in 89 N. W. 66.

in violation of section 1 of article 9 of the constitution of this state, and void, as unequal taxation.

Appeal by plaintiff from an order of the district court for Ramsey county, Jaggard, J., sustaining a general demurrer to the complaint. Affirmed.

*W. B. Douglas*, Attorney General, and *C. W. Somerby*, Assistant Attorney General, for the State.

*Davis, Kellogg & Severance*, for respondent.

BROWN, J.

This action was brought to recover the sum of $480, together with penalties and interest, the amount of a tax assessed against the property of defendant under and pursuant to the provisions of Laws 1897, c. 160, entitled "An act providing for the taxation of freight line and equipment companies." Defendant interposed a general demurrer to the complaint, which was sustained by the court below, and plaintiff appealed.

The facts are as follows: Defendant is a corporation organized and created under the laws of the state of West Virginia, and comes within the definition of a "freight line company," within the meaning of Laws 1897, c. 160. During the year 1898 it was the owner of and engaged in the business of operating and running a large number of freight cars and transporting freight therein over various lines of railroad extending through this state, but not as lessor or owner of the roads. Pursuant to the provisions of the act aforesaid, defendant filed with the state auditor a statement concerning its property, capital stock, etc., from which the state board of equalization duly fixed and determined the amount and value of its taxable property at $24,000. Whereupon the defendant was assessed the amount of $480 as a tax upon such property, the same being equivalent to two per cent. on the value so fixed and determined. Defendant refused to pay the tax on the ground and claim that the statute aforesaid was unconstitutional and void, and the proceedings thereunder a nullity.

The only question presented for consideration is in reference to the validity of the statute. Section 1 of the act is devoted to defining freight line and equipment companies, and, as we have

stated, defendant comes within a freight line company as there defined. Section 2 of the act requires every company coming within its operation to submit under oath to the state auditor a statement containing information as to the number of shares of its capital stock and the par and market value thereof, the value of real estate owned by it in this state, the length of lines of railway over which its cars are run, the length of so much of such lines as is without and within the state, and the whole number and value of the cars owned and operated by it. Section 3 constitutes the state board of equalization a board of assessors and appraisers, and directs that it annually assess the property of such companies, determining the taxable value thereof from the information conveyed by the statement required to be made by section 2. Opportunity is afforded the companies to appear before the board and be heard on any application to review or correct the proceedings had by them. Section 5 provides:

"It shall be the duty of the state auditor in the month of November, annually, to charge and collect from each freight line and equipment company doing business or owning cars which are operated in this state, a sum in the nature of an excise tax or license, to be computed by taking two (2) per cent. of the amount fixed by the state board of appraisers and assessors as the value of the proportion of the capital stock representing the capital and property of such company owned and used in Minnesota, and certified to the state auditor after deducting the value of the real estate of the company in Minnesota, assessed and taxed locally, if any there be."

It is contended by defendant:

1. That if the tax authorized to be levied and assessed by this act is construed to be a license tax imposed upon defendant as a condition to its right to do business in this state, it is in violation of section 8, art. 1, of the constitution of the United States, as an interference with interstate commerce, and beyond the power of the state to impose; and

2. That, if it be construed as a tax upon property owned by the defendant situated in this state, it is in violation of sections 1 and 3 of article 9 of the constitution of this state, as unequal taxation.

There can be no question that defendant, being a foreign corpo-

ration engaged in the transportation of freight over lines of railroad running into and through this state, is engaged in interstate commerce within the meaning of the federal constitution and the decisions of the supreme court of the United States; and, if the act under consideration is to be construed as imposing upon it a license fee as a condition to its right to do such business in this state, it is unconstitutional and void.

The language of the act is that the state board of equalization shall impose a tax "in the nature of an excise tax or license," but a reading of the whole act shows beyond any doubt that it was not the intention of the legislature that the tax should be a license fee imposed as a condition to the right of such corporations to do business in this state. It is beyond the power and authority of the legislature to do so, and we are bound to presume that the intention of the legislature was to enact a constitutional statute. The law is thoroughly settled that a state may exclude from its limits foreign corporations seeking to do business therein, and may impose whatever limitations and restrictions it may choose as conditions to their right to come into the state and do business with its citizens; but the rule does not apply to foreign corporations engaged in interstate commerce. Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851; Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1; Pickard v. Pullman So. Car Co., 117 U. S. 34, 48, 6 Sup. Ct. 635. The conclusion, therefore, must be that the tax imposed by this statute was not intended by the legislature as a license tax.

But from the fact that it is beyond the power of the legislature to impose a license tax upon such corporations it does not follow that their property, employed and used in interstate commerce, may not be subjected to taxation like other property within the jurisdiction of the state. The right of a state to provide for the taxation of such property was sustained by the supreme court of the United States in Pullmans Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876; Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305; and American Refrigerator T. Co. v. Hall, 174 U. S. 70, 19 Sup. Ct. 599. And the method for determining the value of such property as provided in the act

under consideration has been sustained. We do not understand counsel for the state to contend seriously that the tax provided for by this act is not a property tax within a proper construction of the statute. It seems to us that the question is not open to serious debate, and we turn to the vital question in the case, namely, whether the rate of taxation therein imposed is arbitrary and unequal, and, in consequence, repugnant to the constitution of the state.

The constitution of the state provides that all taxes to be raised shall be as nearly equal as may be; and all property upon which the same are levied shall have a cash valuation, and be equal and uniform throughout the state. Perfect equality in taxation is, perhaps, impossible, made so by the failure of property owners to disclose all their taxable property to the assessor, and the inability of the latter to discover it when not voluntarily listed; in consequence of which taxes are not borne in proportion to the amount of property owned by each taxpayer. But all laws providing for their assessment and collection should have that object in view.

"In an exercise of the power to tax, the purpose always is, that a common burden shall be sustained by common contributions, regulated by some fixed general rule, and apportioned by the law according to some uniform ratio of equality. The power is not therefore arbitrary, but rests upon fixed principles of justice, which have for their object the protection of the taxpayer against exceptional and invidious exactions, and it is to have effect through established rules operating impartially." Cooley, Taxn. 2.

This does not require that all persons shall be taxed alike. The nature and character of property and property rights subject to taxation as respects personalty render absolute uniformity impracticable, and necessitate a resort to different methods for bringing intangible property to the tax list. But where the method adopted is a tax upon property based upon valuation, the rate imposed must be uniform, and apply alike to all who are thus taxed. The property of one citizen may not be taxed at a greater rate than that of another. And, however difficult it may be to obtain equality in other respects, a uniform rate may and must be imposed in this class of taxation.

The act under consideration, fixes a uniform rate of two per cent. upon the valuation of the property of corporations coming within its operation, while the general rate of taxation upon other property in the state is fixed and determined by the amount of taxes necessary to be raised for the purposes of defraying the public expenses. It may be one, two, three, or four per cent. The contention of defendant is that the rate so fixed by the act is in violation of the equality provision of our constitution and consequently void. We think, for reasons already stated, defendant's position must be sustained. City of Brookfield v. Tooey, 141 Mo. 619, 43 S. W. 387; State v. Lakeside Land Co., 71 Minn. 283, 73 N. W. 970; State v. Cumberland, 40 Md. 22.

Counsel for the state recognize the apparent soundness of the contention, but urge that, because the general rate of taxation throughout the state in the year 1898 was greater than that imposed by the act, defendant is in no position to complain.

This would seem at first thought to be worthy of consideration, but reflection proves that the position is untenable. The statute must be construed in the light of its general future application and operation, and not with reference to conditions existing at any particular time. Though the tax against defendant for the year 1898, sought to be recovered in this action, was less than the rate upon other property in the state, such general rate might be less than two per cent. another year, while the rate against defendant would remain unchanged. The general rate varies from year to year, but the rate imposed upon defendant is fixed and certain, and does not vary with the rate imposed on other property. A rule that would limit inquiry into the constitutionality of a statute to those injuriously affected would, in a measure at least, render the fundamental guaranty of equality before the law inoperative, and of no practical value. The act under consideration, if such rule were adopted, would be constitutional when the general rate of taxation is greater than that imposed thereby upon corporations like defendant, and unconstitutional when the general rate was less than that imposed on such corporations. It is manifest that this contention cannot be sustained.

The act, in so far as it attempts to impose a tax upon freight

line companies, is perfectly valid, and within the power of the legislature; but the rate of taxation imposed thereby, being arbitrary, and not uniform with the rate imposed on other property similarly taxed, is unequal, and in violation of the equality provision of our constitution, and consequently void. If the rate imposed were uniform with the average rate imposed on other property in the state, the act could be sustained.

Order affirmed.